IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DARRYL HUDSON and<br>LORENZO HUDSON,<br><br>　　　Plaintiffs,<br><br>vs.<br><br>CITY OF MOBILE, ALA.[1] and<br>JUDGE C. MARK ERWIN,[2]<br><br>　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)　Civil Action No. 25-00152-KD-MU<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER**

This action is before the Court on the "60B motion to set aside judgment and objection to Courts denial to amend complaint and denial as futile to add proper Defendant and extension of time to serves in reference to dismissal of the Monell claim against Mobile County" (*sic*) (doc. 19) and supplement (doc. 20-1) filed by Plaintiff Darryl Hudson ("Hudson").[3]  Upon consideration and for the reasons set forth herein, the Motion is denied.

I. Background[4]

In relevant part, on January 6, 2026, this Court denied Darryl and Lorenzo Hudsons' motion for leave to amend the complaint to add Mobile County as a defendant (docs. 13, 18).

---

[1] The City of Mobile has been dismissed from this action.

[2] Judge Erwin has been substituted for retired Probate Judge Don Davis.

[3] Plaintiff Lorenzo Hudson did not sign the Rule 60(b) Motion. Plaintiff Darryl Hudson is not an attorney and therefore, he cannot represent Lorenzo Hudson. See Torres v. Boundy, No. 25-11455, 2026 WL 823228, at *1, n.1 (11th Cir. Mar. 25, 2026) ("a non-attorney cannot represent the interests of another party."). Thus, the Court will address the Motion as to Darryl Hudson only.

[4] A detailed background can be found in the Order entered January 6, 2026 (doc. 18).

The Hudsons proceeded on a theory of <u>Monell</u> liability. <u>Monell v. Department of Social Services of City of New York</u>, 436 U.S. 658, 694–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  The Court found that allowing the amendment would be futile because Mobile County would be subject to dismissal from this action.  The Court explained that former Mobile County Probate Judge Don Davis was acting on behalf of the State of Alabama when he presided over the probate of the Hudsons' father's Will, and that he was not acting as a policymaker for Mobile County or in an area of Mobile County's business.  As a result, Mobile County could not be liable under <u>Monell</u>.

II. <u>The Rule 60(b) Motion</u>

Hudson argues that the Court "made a plain error and a manifest injustice" when it denied the motion for leave to amend to add Mobile County as a defendant. Hudson argues that the Court made mistakes, that the "judgment" (Order denying the motion) should be void, and that "extraordinary circumstances" exist which merit vacating the Order (doc. 19)[5] (citing Fed. R. Civ. P. 60(b)(1), (4), and (6)).

III. <u>Statement of the law</u>

Pursuant to Rule 60(b), the Court "may relieve a party … from a final judgment, order, or proceeding". Fed. R. Civ. P. 60(b).  "The purpose of a Rule 60(b) motion is to allow the court to reconsider matters to 'correct obvious errors or injustices and so perhaps obviate the laborious process of appeal.'" <u>Cromity v. City of Orlando</u>, 2025 WL 2742414, at *2 (11th Cir. Sept. 26, 2025), <u>cert. denied sub nom. Cromity v. Orlando, Fl</u>., 2026 WL 490747 (U.S. Feb. 23, 2026) (citations omitted).  The Rule cannot be used to present the same evidence and argument that

---

[5] "(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, …; (4) the judgment is void; or (6) any other reason that justifies relief." Fed. R. Civ. P. 60.

was previously considered and rejected. Madura v. BAC Home Loans Servicing, LP, 655 Fed. Appx. 717, 725 (11th Cir. 2016). Or to "raise argument or present evidence that could have been raised prior to the entry of judgment.'" In re Smith, 2025 WL 2827458, at *2 (11th Cir. Oct. 6, 2025) (quoting Michael Linet, Inc. v. Vill. of Wellington, 408 F.3d 757, 763 (11th Cir. 2005)).

A "mistake" under Rule 60(b)(1) includes the Court's mistake or legal error. See Kemp v. United States, 142 S. Ct. 1856 (2022) (holding that "mistake" in Rule 60(b)(1) "includes legal errors made by judges"); United States v. One Million Four Hundred Forty-Nine Thousand Four Hundred Seventy-Three Dollars and Thirty-Two Cents ($1,449,473.32) in United States Currency, 152 Fed. Appx. 911, 912 (11th Cir. 2005) ("Rule 60(b)(1) 'encompasses mistakes in the application of the law [,]' including judicial mistakes."). "[W]here a district court's mistake was clear on the record and involved a plain misconstruction of the law and the erroneous application of that law to the facts, compelling policies of basic fairness and equity reflected by 60(b) may mandate amendment to conform its judgment to the law." Nisson v. Lundy, 975 F.2d 802, 806 (11th Cir. 1992) (citation omitted); Chambers v. Fla. Parole Comm'n, 257 Fed. Appx. 258, 259 (11th Cir. 2007) ("… typically the district court is not required to grant relief unless the legal error is obvious.").

Pursuant to Rule 60(b)(4), the district courts may relieve a party from a final judgment or order, if it is void. "A judgment is not void 'simply because it is or may have been erroneous.' … 'Instead, Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard.' … '[ ] A judgment is "void" under Rule 60(b)(4) if it was rendered without jurisdiction of the subject matter or the parties or in a manner inconsistent with

3

due process of law.'[ ]."  Bainbridge v. Governor of Fla., 75 F.4th 1326, 1335 (11th Cir. 2023) (citations omitted).

Although Hudson includes Rule 60(b)(6) as a basis for his Motion, this Rule is a "'catchall' provision," which "'grants federal courts broad authority to relieve a party from a final judgment upon such terms as are just, provided that the motion is . . . not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5).'" Cromity, 2025 WL 2742414, at * 2 (citations omitted).  Hudson's arguments appear to fall within either Rule 60(b)(1) or 60(b)(4).

IV. Analysis

A. Payment of the Filing Fee

Hudson argues that the "Court must consider the fact that the Hudsons complaint is a fee paid complaint and does not fall under the federal statute" - 28 U.S.C. § 1915(e)(2) (doc. 19, p. 2, ¶ 1).  Hudson appears to argue that because he paid the filing fee, the Court cannot sua sponte dismiss this action as "frivolous, malicious, fails to state a claim, or seeks monetary relief from a defendant immune from such relief" without allowing leave to amend (Id.).

This argument appears to fall within Rule 60(b)(1).  However, the Court has not committed a mistake or error. The Court did not rely upon 28 U.S.C. § 1915(e)(2) when it denied the Hudsons' motion for leave to amend the Complaint.  Also, the Court is not required to allow leave to amend because Hudson as a pro se litigant paid the filing fee.

The Court of Appeals for the Eleventh Circuit addressed a similar argument in Vega v. Kahle, No. 23-12065, 2025 WL 3540349, at *3 (11th Cir. Dec. 10, 2025). The Eleventh Circuit explained as follows:

> So, Vega's argument is that, because he paid the filing fee, the district court
> could not sua sponte dismiss his suit (which he does not deny was frivolous)

before notifying him of the dismissal and providing him with an opportunity to respond. Vega believes that his payment of the filing fee "exempted [his] complaint from screening or dismissal under [28 U.S.C. § 1915]" and endowed his frivolous complaint with the aforementioned procedural protections, unlike a plaintiff proceeding in forma pauperis under § 1915.

But Vega is wrong as a matter of law. To begin with, the district court did not invoke the in forma pauperis screening provisions of § 1915, so we reject Vega's suggestion that the district court somehow erred in "dismiss[ing] his case sua sponte under the screening provisions of § 1915"—something it did not do.

More importantly, Vega is incorrect when he states that this Court "prohibits" sua sponte dismissals under Rule 12(b)(6) where the district court did not provide the plaintiff with notice of its intent to dismiss or an opportunity to respond. We have held that, generally, "[p]rior to dismissing an action on its own motion, a court must provide the plaintiff with notice of its intent to dismiss and an opportunity to respond." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1248 (11th Cir. 2015) (citing *Tazoe v. Airbus S.A.S.,* 631 F.3d 1321, 1336 (11th Cir. 2011)). But we have carved out an exception to this requirement: "when amending the complaint would be futile, or when the complaint is patently frivolous." *Id.*; *see also Tazoe*, 631 F.3d at 1336 ("To employ fair procedure, a district court must generally provide the plaintiff with notice of its intent to dismiss or an opportunity to respond. There is an exception to our general rule against dismissal without notice if the complaint is patently frivolous or if reversal ... would be futile." (internal quotations omitted)). Our precedent thus recognizes that a district court is permitted to sua sponte dismiss a suit without notice and opportunity if the court determines that the complaint is patently frivolous or amendment would be futile.

Vega v. Kahle, No. 23-12065, 2025 WL 3540349, at *3–4 (11th Cir. Dec. 10, 2025) (footnotes omitted).

B. Hudson's Pro Se Status

Hudson argues that because pro se litigants are held to a "less stringent standard" the Court should have liberally interpreted the filings and "not dismiss[ed] them for simple procedural mistakes or inartful pleadings" and allowed "a chance to prove claims of

constitutional rights violations" (doc. 19, p. 8, ¶ 14).  Hudson also argues that the Court erred by not following the "Pro Se Generosity Principle" expressed in Dulcio v. Env't Prot. Agency, No. 23-13045, 2025 WL 2104263, at *4 (11th Cir. July 28, 2025).  He argues that the Court failed to err on the side of generosity "when it permanently dismissed the Hudsons case [by] denying the Hudsons right to amend their complaint and add the proper Defendant" – Mobile County (Id.).

This argument appears to fall within Rule 60(b)(1).  However, the Court has not committed a mistake or error. In Dulcio, the Eleventh Circuit explained that "where the issue of futility is 'close' we 'err on the side of generosity' to the plaintiff" and that "where a more carefully drafted complaint 'could *conceivably* state a valid claim' we will vacate and remand to the district court to allow for amendment." (2025 WL 2104263, at n. 4) (italics in original).

The issue of futility was not close.  A more carefully drafted complaint could not conceivably change the fact that the Probate Judge was acting on behalf of the State of Alabama and not on behalf of Mobile County, and therefore, Mobile County could not be liable under a Monell theory of liability. Silberman v. Miami Dade Transit, 927 F.3d 1123, 1128 (11th Cir. 2019) ("Ordinarily, we might be inclined to remand to allow [the plaintiff] one more shot, particularly given his pro se status. We conclude, however, that any further amendment of the complaint would be futile, as [the plaintiff] didn't—and for reasons we'll explain, can't— otherwise state a claim.")

C. Violation of the "Federal Rule 8 Spirit of Clarity and Conciseness"

Hudson argues that this Court violated "Federal Rule 8 Spirit of Clarity and Conciseness" (doc. 19, p. 2-3, ¶¶ 2, 3).  Specifically, he argues that the Court made "a conclusory statement of futility . . . which violates" Rule 8 (Id., p. 7, ¶ 12). And that the Court's "Order did not provide

[him] with a clear and concise reason, evidence, or explanation "supported by the facts as to why [he was] not entitled to amend and [why] the amendment would be futile" (Id., p. 2-3, ¶¶ 2, 3).

This argument appears to fall within Rule 60(b)(1).  However, the Court has not committed a mistake or error. To the extent that the Court should comply with the spirit of clarity and conciseness expressed in Rule 8, the Court did comply.  The Court did not make a conclusory statement of futility.  The Court provided clear and concise reasons supported by the facts alleged by the Hudsons and supported by Eleventh Circuit precedent to explain why a Monell based claim against Mobile County would be futile. See Doc. 18, p. 5-8.

D. Violation of Eleventh Circuit Precedent

Hudson argues that this Court violated Eleventh Circuit precedent – Dulcio - which "clarifies" the limits on dismissing claims with prejudice when the complaint is characterized as a "shotgun" pleading and reemphasized the "Futility Standard for Pro Se Litigants." (doc. 19, p. 3-4, ¶ 4).  Hudson argues that

> The decision [in Dulcio] generates a practical, if not doctrinal, precedent: district courts within the Eleventh Circuit must conduct a claim-by-claim futility analysis before dismissing any part of a shotgun pleading with prejudice – especially for pro se litigants.

(Id., p. 3, ¶ 4). He argues that as a result, the Court has a "heightened judicial discipline" to "articulate specific reasons why each challenged count is incurable". (Id., p. 3, ¶ 4).  He argues that the Court failed to do so because it did not give a "clear concise reason in support of" its decision that allowing the Amended Complaint would be futile. (Id., p. 4, ¶ 4).

This argument appears to fall within Rule 60(b)(1).  Hudson is mistaken. The Court did not find that the Complaint or the proposed Amended Complaint was a "shot gun" pleading.  The Court did "conduct a claim-by-claim futility analysis."  The only "claim" that the Hudsons sought leave to add was a Monell claim against Mobile County, which necessarily implicated

7

adding Mobile County as a defendant.  The Court gave clear and concise reasons for finding that allowing leave to amend to add Mobile County would be futile. See Doc. 18, p. 5-8.

Additionally, in Dulcio, the Eleventh Circuit did not find that pro se litigants should be allowed to amend their complaint when the amendment would be futile, i.e., would fail to state a claim upon which relief can be granted.  The Eleventh Circuit explained that pro se plaintiffs "'must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice' unless amendment would be futile. … Amendment is futile where even a 'more carefully drafted complaint could not state a claim.'" 2025 WL 2104263, at 4 (emphasis added).  Here, no matter how carefully the Hudsons drafted their proposed Amended Complaint they could not plausibly state a viable Monell claim against Mobile County based upon Judge Davis's alleged conduct.

E.  Misapplication of the Test for Monell liability

Hudson argues that this Court "mistakenly" decided that "the Hudsons has to show prove the Judge Don Davis created a policy for the County under Monell.  However the test is whether the County Official tolerate continued misconduct with deliberate indifference" (sic) (doc. 19, p. 5, ¶ 7) created a policy, custom, or pattern of civil rights violations (Id., p. 4-5, ¶¶ 5-7, p. 8, ¶13).[6]  Hudson argues that the evidence shows that for the last ten years, Judge Davis and other judicial officials have violated the civil rights of the citizens in cases before them, that Mobile County knew of these violations because of the media coverage, that Mobile County tolerated these violations and therefore, acted with deliberate indifference toward the civil rights of the citizens.  Hudson argues that Mobile County's tolerance and deliberate indifference became its

---

[6] "The District [Court] has mistakenly state[d] the Hudsons have to prove Judge Don Davis has created a policy that is in error. Under Monell the jury has to decide if the County Official via

unofficial custom or policy and that policy was the moving force behind Judge Davis's violation of their civil rights.  Hudson acknowledges the "commentary" that judges are "state actors" but argue that the Probate Judges are paid by Mobile County and "the judges represent the citizens in Mobile County". From this, he argues that Mobile County is liable under Monell for its unofficial custom and pattern of tolerating civil rights violations by the judges (Id., p. 10).

This argument appears to fall within Rule 60(b)(1).  However, the Court did not mistakenly require the Hudsons to show that Judge Davis was a policy maker for Mobile County instead of requiring them to show that Mobile County's unofficial custom, pattern or practice of tolerating judicial civil rights violations was the moving force behind Judge Davis's conduct. Monell liability may be established by "constitutional torts result[ing] from an official government policy, the actions of an official fairly deemed to represent government policy [i.e., a final policymaker], or a custom or practice so pervasive and well-settled that it assumes the force of law." Huggins v. Sch. Dist. of Manatee Cnty., 151 F.4th 1268, 1285 (11th Cir. 2025) (citations omitted) (bracketed text added).  As to each method,

> … "a plaintiff must show that the [municipality] has authority and responsibility over the governmental function at issue" before the municipality can be held liable under Monell. Teagan v. City of McDonough, 949 F.3d 670, 675 (11th Cir. 2020) (citation modified). So, a "critical and threshold question is whether" the officials who performed the challenged governmental function acted "on behalf of the" municipality. Id. Generally, a "judge acts on behalf of the state, and not on behalf of the municipality, when he engages in judicial acts for the purpose of applying or enforcing a state law." Id. at 676–77 (citing Familias Unidas v. Briscoe, 619 F.2d 391, 404 (5th Cir. 1980)).

(Doc. 18, p. 6) (quoting Little v. City of Valley, Alabama, 2025 WL 3280951, at *2–3 (11th Cir. Nov. 25, 2025).  In its Order, the Court attempted to explain to the Hudsons that whether acting

---

their deliberate indifference behavior continue to allow Judicial Officials to violate citizens rights." (doc. 19, p. 8, ¶ 13).

as a final policy maker or acting pursuant to a policy or an unofficial custom or practice, Judge Davis was <u>not</u> acting on behalf of Mobile County.

The Court explained that the Hudsons "must show that the [municipality] has authority and responsibility over the governmental function at issue before the municipality can be held liable under <u>Monell</u>" (Id.) (citation omitted).  And explained that Mobile County has no "authority and responsibility over the governmental function at issue" i.e., the probate of Wills. Thus, any alleged unofficial custom, pattern, or policy of tolerance or deliberate indifference that Hudson believes exists is of no consequence.  Probate Judges act on behalf of the State of Alabama when presiding over the probate of Wills and thus the State has authority and responsibility over the governmental function at issue.

F. <u>Whether the Probate Judge Davis acted on behalf of Mobile County when he issued the Letters Testamentary.</u>

In the supplement (doc. 20-1), Hudson alternatively argues that Judge Davis acted in both a judicial capacity on behalf of the State and as a final policymaker for Mobile County, and therefore, the Court erred in denying the motion for leave to amend as futile (Id., p. 6). Hudson argues that Judge Davis performed "judicial duties on the bench" when he granted summary judgment in favor of Genise Withers before the Hudsons completed their discovery and filed a response (the conduct that allegedly violated their constitutional due process rights). He argues that when Judge Davis subsequently issued the Letters Testamentary to Withers, he performed administrative or executive "duties off the bench" for Mobile County and was "acting as a final policy maker as a County Official, which can trigger a [Monell] violation against the County" (doc. 20-1, p. 2-6).

Hudson argues that

10

A Monell claim arises if the probate judge, acting as the final policymaker for the county in an administrative capacity, implements a policy, custom, or a single, unreviewable decision that violates a person's federal constitutional rights. While many probate decisions are judicial, when the judge is not "on the bench" but acting in an administrative capacity (such as in the management of estate files or issuing letters), they are considered to be making policy for the county. If this action is the "moving force" behind a constitutional deprivation, the county may be liable.

(Doc. 20-1, p. 5). They also argue that

Based on Alabama law, the Probate Judge of Mobile County is considered an elected county official. While the office holds judicial power, many of its functions – including the issuance of letters testamentary and administration - are administrative/executive duties performed by the judge.

In Alabama, a probate judge acting in an administrative or executive capacity can be considered a final policymaker for the county under Monell … if their decisions regarding the issuance of letters testamentary or the administration of estates are not constrained by superior officials or subject to an administrative review.

(Doc. 20-1, p. 4).

Hudson relies upon Ala. Code § 12-13-1, which grants the probate courts "original and general jurisdiction" over the probate of wills and granting of letters testamentary, as well as Ala. Code § 12-13-3,[7] 12-13-41,[8] and 12-13-14,[9] and Ala. Code § 43-2-20,[10] which relate to the

---

[7] Stating that the "probate court shall at all times be considered as open, except on Saturdays, Sundays and holidays, with authority to do all things needful in relation to granting letters testamentary or of administration or guardianship and all matters pertaining thereto and making all other necessary orders which are grantable as a matter of course."

[8] "It shall be the duty of the probate judge: (1) To issue all citations, letters testamentary, of administration and guardianship, subpoenas, executions and all other process which is necessary for the exercise of his powers, the jurisdiction of the court and the enforcement of its judgments, orders and decrees." Ala. Code § 12-113-41 "Duties of Probate Judges Generally."

[9] Stating that the Chief Clerk of Probate may issue letters testamentary if there is no contest.

11

issuance of Letters Testamentary. Hudson also cites <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469 (1986), <u>City of St. Louis v. Praprotnik,</u> 485 U.S. 12 (1988), and <u>Hill v. Clinton</u>, 74 F. 3d 1150 (11th Cir. 1996) for the premise that the conduct of officials who have final policy making authority can trigger <u>Monell</u> liability.

Hudson is mistaken. Judge Davis did not act as a final policymaker for Mobile County when he issued the Letters Testamentary. He acted on behalf of the State of Alabama. Title 12 of the Alabama Code applies to the Courts of Alabama and Chapter 13 applies to the Probate Courts. The statute states that "[t]he probate court shall have original and general jurisdiction over the following matters: … The granting of letters testamentary …" Ala. Code § 12-13-1(b)(2). Also, Title 43 of the Alabama Code applies to "Wills and Decedents' Estates". Chapter 2 governs the courts' "Administration of Estates" and Article 2, Division 1 applies to the "Grant of Letters Testamentary." Ala. Code § 43-2-20 to 43-2-29 ("Whenever a will has been admitted to probate in this state, the judge of the court in which the will was probated may issue letters testamentary, according to the provisions of this article, …") <u>Id</u>. at Ala. Code § 43-2-20. Even though the probate judge may not be "on the bench", when executing and issuing Letters Testamentary, the probate judge is acting in a judicial capacity on behalf of the State and performing a judicial function. The probate judge is not acting on behalf of the county.

G. <u>Violation of Hudson's Fifth Amendment right to due process in this Court – right to a trial by jury.</u>

Hudson argues that under Rule 60(b)(1) and (4), "this judgment should be void as unconstitutional" because his Fifth Amendment rights to due process have been violated "at the

---

[10] Title 43, Chapter Two applies to the grant of letters of administration and Section 20 states that "Whenever a will has been admitted to probate in this state, the judge of the court in which the will was probated may issue letters testamentary, according to the provisions of this article, to the persons named as the executors in such will, if they are fit persons to serve as such."

federal level" (doc. 19, p. 5, 7, 9, 10, ¶¶ 5, 8, 12, 14, 15). He argues that by denying the motion for leave to amend the Complaint, this Court did not follow precedent established in <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). He argues that the Supreme Court in <u>Anderson</u> established that "once a dispute has been created a judge have no authority to dismiss the case by stating who's right and who's wrong. This is plain error and manifest injustice against the Hudsons' fifth Amendment due process to not be able to be judged by an unbiased trier of the fact and be given an opportunity to present their evidence in a meaningful way and be heard" (*sic*) (Id., p. 5 ¶ 5).

Hudson argues that because there is a "genuine dispute about relevant facts in this case", "[u]nder <u>Monell</u>, the jury has to decide if … County Official[s] via their deliberate indifference behavior continue to allow Judicial Official[s] to violate" citizen's rights, not the Court and this Court "cannot simply state it will be futile for the court to allow an amended complaint or just prevent the adding of the proper Defendant" (Id., p. 8, ¶ 12, 13, p. 9, ¶ 15). Hudson argues that allowing "an unbiased jury" to consider the facts "is due process" and that he is "entitled to fairness and not arbitrary and capricious rulings" by the Court that the proposed Amended Complaint was futile (Id., p. 10).

The Court did not act in an arbitrary and capricious manner when it denied the motion for leave to amend, and thus the Order (doc. 18) is not void for violating any due process right to a jury trial. In <u>Surtain</u>, the Eleventh Circuit explained that generally before "dismissing an action on its own motion, the court must provide the plaintiff with notice of its intent to dismiss and an opportunity to respond." 789 F. 3d at 1248. However, the Eleventh Circuit further explained that an "exception to this requirement exists, … when amending the complaint would be futile, or when the complaint is patently frivolous." <u>Id</u>. (citing <u>Tazoe</u>, 631 F.3d at 1336 (11th Cir. 2011));

13

see supra, Vega, 2025 WL 3540349, at *3 ("We have held that, generally, '[p]rior to dismissing an action on its own motion, a court must provide the plaintiff with notice of its intent to dismiss and an opportunity to respond. … But we have carved out an exception to this requirement: 'when amending the complaint would be futile, or when the complaint is patently frivolous.'") (citing Surtain, 789 F.3d at 1248 and Tazoe, 631 F.3d at 1336)).  The Eleventh Circuit confirms that "[o]ur precedent thus recognizes that a district court is permitted to sua sponte dismiss a suit without notice and opportunity if the court determines that the complaint is patently frivolous or amendment would be futile." Vega, 2025 WL 3540349, at *3. The Court was not required to give Hudson notice and an opportunity to respond to its decision to deny as futile the motion for leave to amend the Complaint.

 H. Subject Matter Jurisdiction

 Hudson appears to argue that because this Court has subject matter jurisdiction over a civil rights violation by a judicial official and because he stated a claim against Mobile County that "is not so attenuated and unsubstantial and devoid of merit" (doc. 19, p.7), the Court erred by denying the motion for leave to amend as futile. And consequently, erred by not allowing the proposed Amended Complaint and by not requiring Mobile County to respond (Id., p. 6-8, ¶¶ 9, 10, 11, 12).  As to the merits, Hudson argues that he and Lorenzo Hudson presented evidence that Mobile County's unofficial custom of deliberate indifference to judicial misconduct was the moving force behind Judge Davis's violation of their civil and due process rights (Id.).

 This argument appears to fall within Rule 60(b)(1) or 60(b)(4).  However, the Court has not made a mistake, and the Court's decision is not void as violative of due process.  The Hudsons' motion for leave to amend was denied as futile.  In the futility analysis, the Court determines whether the proposed amended complaint if allowed would be subject to dismissal or

summary judgment for the intended defendant. See Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant.") (citation omitted).  Here, allowing amendment to add Mobile County as a defendant on any Monell theory of liability for Judge Davis's conduct while acting on behalf of the State, would be immediately subject to dismissal or summary judgment, and thus, futile. See Turquitt v. Jefferson Cnty., Ala., 137 F.3d 1285, 1292 (11th Cir. 1998) ("… local governments can never be liable under § 1983 for the acts of those whom the local government has no authority to control. A local government 'must have power in an area in order to be held liable for an official's acts in that area.' . . . In addition, a local government can only be liable under § 1983 for injuries which the government itself caused, Monell, 436 U.S. at 691, 98 S.Ct. at 2036, and causation necessarily implies control.").  Thus, the Court committed no due process error by not allowing the proposed Amended Complaint and by not requiring Mobile County to respond.

V. Conclusion

Upon consideration, and for the reasons set forth herein, the Rule 60(b) Motion is denied.

The Clerk shall mail a copy of this Order to Darryl Hudson and Lorenzo Hudson at their address of record.

**DONE** and **ORDERED** this 15th day of April 2026.

**s/ Kristi K. DuBose**
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**